UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELISSA WATKINS,<br><br>        Plaintiff,<br><br>-against-<br><br>VESPER HEALTHCARE ACQUISITION CORP., BRENTON L. SAUNDERS, MANISHA NARASIMHAN, MICHAEL D. CAPELLAS, JULIUS FEW, and BARRY S. STERNLICHT,<br><br>        Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

  Plaintiff, Elissa Watkins ("Plaintiff"), by her undersigned attorneys, alleges upon personal knowledge with respect to herself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

  1. This action is brought by Plaintiff against Vesper Healthcare Acquisition Corp. ("Vesper" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Vesper, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Merger") between Vesper and The HydraFacial® Company ("HydraFacial"). Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

  2. On December 8, 2020, Vesper entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Vesper will pay cash consideration and issue shares of

1

its class A common stock to holders of HydraFacial stock for a combined value of approximately $975,000,000 less HydraFacial's net indebtedness (the "Merger Consideration"). The cash consideration will be an amount equal to the Company's cash and cash equivalents, minus HydraFacial's outstanding indebtedness, minus transaction expenses of HydraFacial and the Company, minus $100,000,000. In connection with the Proposed Merger, Vesper will pay off HydraFacial's outstanding indebtedness under its existing credit facilities. In addition to the Merger Consideration, the stockholders of HydraFacial may be entitled to receive contingent consideration from the Company if certain acquisition targets identified by HydraFacial are acquired before or within one year after the closing of the Proposed Merger. The post-merger combined company will continue under a new name and trade on the Nasdaq under a new ticker symbol. After the closing of the Proposed Merger, Vesper's current common stockholders will only retain an ownership interest of approximately 37.2% in the post-combination company.

3.  On December 31, 2020, in order to convince Vesper shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading preliminary proxy statement (the "Proxy") with the SEC in violation of Sections 14(a) and 20(a) of the Exchange Act and in breach of the Individual Defendants' duty of disclosure.

4.  In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections and valuation information related to Vesper, HydraFacial, the combined company, and/or the Merger Consideration; (ii) the Company's financial advisor Goldman Sachs & Co. LLC ("Goldman Sachs"); and (iii) the process and background of the Proposed Merger.

5.  The special meeting of Vesper shareholders to vote on the Proposed Merger is forthcoming (the "Shareholder Vote"). It is imperative that the material information that has been

omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote and properly exercise her corporate suffrage rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and breach of the duty of disclosure. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to Vesper's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breach of the duty of disclosure.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum

contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316

10. Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Vesper's common stock trades on the Nasdaq Capital Market, which is headquartered in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11. Plaintiff is, and at all relevant times has been, a holder of Vesper common stock.

12. Defendant Vesper is a blank check company formed in order to effect a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or other similar business combination with one or more businesses or entities. The Company is a Delaware corporation and its common stock trades on the Nasdaq under the ticker symbol "VSPR".

13. Individual Defendant Brenton L. Saunders has been the President and Chief Executive Officer of the Company and Chairman of the Board at all relevant times.

14. Individual Defendant Manisha Narasimhan has been the Chief Financial Officer and a director of the Company at all relevant times.

15. Individual Defendant Mike Capellas has served as director of the Company at all relevant times.

16. Individual Defendant Julius Few has served as director of the Company at all relevant times.

17. Individual Defendant Barry S. Sternlicht has served as director of the Company at all relevant times.

18.     The Individual Defendants referred to in ¶¶ 13-17 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with Vesper they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

I. **Background and the Proposed Merger**

19.     Vesper is a blank check company. The Company was formed for the purpose of effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination with one or more businesses. The Company intends to acquire and operate a business in the pharmaceutical or healthcare sectors.

20.     HydraFacial is a beauty health company offering medical aesthetics and traditional skin and personal care products. HydraFacial distributes its products in 87 countries through multiple channels including day spas, hotels, dermatologists, plastic surgeons and beauty retail.

21.     On December 9, 2020, Vesper and HydraFacial issued a joint press release announcing the Proposed Merger, which states in relevant part:

**HydraFacial, an Experiential Beauty Health Company, and Vesper Healthcare Announce Business Combination**

- *HydraFacial is a category-creating beauty health company that provides a platform and technology to a community of providers and consumers, to deliver an experiential, 30-minute facial that offers results similar to a medical treatment*
- *The transaction is expected to drive both U.S. and international growth, and broaden HydraFacial's global footprint in the beauty-health category*
- *Transaction values HydraFacial at an enterprise value of $1.1 billion. Following the transaction, the company expects to have $100M in cash and no debt*
- *Top-tier institutional investors anchoring the fully committed $350 million PIPE include Fidelity Management & Research Company, LLC, Redmile Group, LLC, Principal Global Investors, LLC, Camber Capital Management and Woodline Partners LP*
- *Linden Capital Partners, a leading private equity firm, will remain the Company's largest shareholder*

Miami Beach, Florida, and Long Beach, California, December 9, 2020 -- The HydraFacial® Company ("HydraFacial," or the "Company"), a category-creating beauty health company, and Vesper Healthcare Acquisition Corp. (NASDAQ: VSPR) ("Vesper Healthcare"), a special purpose acquisition company co-founded by Brent Saunders, former CEO of Allergan, Forest Laboratories, and Bausch + Lomb, today announced that they have entered into a definitive merger agreement pursuant to which HydraFacial and Vesper Healthcare will combine, and after which HydraFacial will become a public company. Upon completion of the transaction, the combined company expects to be listed on the NASDAQ exchange. HydraFacial is owned by Linden Capital Partners ("Linden") and DW Healthcare Partners IV, LP ("DWHP") both of which are private equity firms focused exclusively on the healthcare industry.

Headquartered in Long Beach, California, The HydraFacial Company has a 23-year history. The Company's HydraFacial system offers an effective, experiential, non-invasive and accessible skin treatment experience. The HydraFacial signature treatment utilizes an innovative approach using a delivery system to provide, within approximately 30 minutes, a three-step experience to cleanse, extract and hydrate skin, offering an immediate outcome and an instantly gratifying glow. Treatments can be further customized to address individual skin concerns and needs with the use of a variety of specific booster serums.

In December of 2016, the Company was acquired by private equity firms Linden and DWHP. Since then, HydraFacial has generated compounded annual revenue growth of more than 50% through 2019. HydraFacial has built a community of loyal estheticians and consumers through its innovative skincare solutions, education and comprehensive training for estheticians, combined with sales and marketing initiatives and impactful social media campaigns. Overall, HydraFacial currently has over 15,000 delivery systems in more than 87 countries globally with the HydraFacial and Perk™ products. In 2019, 3.2 million HydraFacial treatments were performed worldwide.

HydraFacial is well positioned to benefit from four key advantages: (i) a large and growing market with favorable demographic trends; (ii) a technologically advanced offering with high consumer and provider satisfaction; (iii) a shift in consumer behavior in seeking approachable and effective skin health solutions that bridge the gap between traditional beauty and healthcare options; and (iv) a diversified channel mix that spans multiple touch points including day and resort spas, medical offices such as dermatology and plastic surgery, and beauty retail.

Future growth opportunities and investments for HydraFacial include training to improve esthetician education and build loyalty, investing in targeted sales and marketing, expanding global footprint, and accelerating R&D efforts to improve and elevate its offerings and create innovative products.

Upon the closing of the proposed transaction, HydraFacial's senior management will continue to serve in their current roles. HydraFacial will continue to be led by Chief Executive Officer, Clint Carnell. Liyuan Woo will continue as Chief Financial Officer. Following the transaction, Brent Saunders, CEO of Vesper Healthcare will serve as Executive Chairman. Manisha Narasimhan, PhD, CFO of Vesper Healthcare, will join HydraFacial as Chief Strategy Officer.

Management and Board of Directors' Comments:

Clint Carnell, HydraFacial CEO stated: "Our goal at HydraFacial has been to create an incredible experience that is effective, democratized, and personalized, for men and women of all ages and skin types. Our HydraFacial technology does just that, which has led to exceptional loyalty and satisfaction from estheticians and consumers alike. Our treatments provide immediate and noticeable results to consumers, and a strong return on investment for providers. We have a proven track record of growth in a large and growing market, we have developed a critical mass globally with over 15,000 delivery systems in operation and our business model provides us with a recurring revenue stream in consumables. This, along with favorable demographic trends, supported by our experienced team which has been made even stronger by combining with Vesper Healthcare, has created a business model that we believe is well positioned to deliver sustained long-term growth. We plan to leverage our infrastructure to bring to market additional innovative products backed by powerful technology. I am honored to partner with Brent and Manisha and look forward to benefiting from their insights as we embark on this new chapter."

Brent Saunders, CEO and co-founder of Vesper Healthcare said, "This is a significant day for Vesper Healthcare and HydraFacial as we team up with a category-creating company in the emerging area of beauty health. Our goal is to build a premier company in beauty health, focused on providers such as estheticians and nurse practitioners, consumers, and partners and we believe that HydraFacial is the perfect platform to achieve this goal. HydraFacial possesses industry-leading consumer satisfaction scores and has presence in two high-growth categories within personal care – skincare and, more recently, hair care. We look forward to working with the HydraFacial team to create a valuable, industry-leading, global company in beauty health."

Linden Managing Partner Brian Miller and Partner Kam Shah added, "We would like to thank the entire HydraFacial management team for driving extraordinary growth in the beauty health category. HydraFacial's rapid transformation from a niche medical technology provider into a category-creator represents another great example of Linden's differentiated Value Creation Program and Human Capital strategy in practice. As the largest individual shareholder going forward, Linden looks forward to providing continued partnership and support to the Company."

Details of the transaction:

Under the terms of the definitive merger agreement, the transaction is valued at a pro forma enterprise value of $1.1 billion. The purchase price consists of $975 million payable at closing and up to $75 million payable upon the completion of certain identified acquisitions by the combined company. The acquisition will be funded through a combination of cash in Vesper Healthcare's trust account, proceeds from a common stock private placement led by premier institutional investors including Fidelity Management & Research Company, LLC, Redmile Group, LLC, Principal Global Investors, LLC, Camber Capital Management and Woodline Partners, LP and sellers' rollover equity. HydraFacial expects to have a debt free balance sheet at closing. Vesper Healthcare, Linden and DWHP will each retain an equity stake in the combined company.

The transaction, which has been unanimously approved by both Vesper Healthcare's and HydraFacial's boards of directors, is expected to close in the first half of 2021 and is subject to approval by Vesper Healthcare's shareholders and other customary closing conditions, including any applicable regulatory approvals.

Goldman Sachs & Co. LLC is serving as an exclusive financial advisor and private placement agent and Wachtell, Lipton, Rosen & Katz is serving as legal advisor to Vesper Healthcare. Jefferies LLC is serving as Lead Financial Advisor, Piper Sandler is serving as Financial Advisor and Kirkland & Ellis LLP is acting as legal advisor to HydraFacial.

**II.     The Proxy Omits Material Information**

22.     On December 31, 2020, Defendants filed the materially incomplete and misleading Proxy with the SEC. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision in connection with the Proposed Merger.

<u>The Misleadingly Incomplete Financial Projections and Valuation Information</u>

23.     The Proxy states that Goldman Sachs provided a presentation to the Board of directors on December 8, 2020 (the day the Merger Agreement was executed) regarding the financial aspects of the Merger Consideration, including intrinsic valuation and other financial

8

analyses. The Proxy then states that these intrinsic valuation and other financial analyses were a "material" factor the Board considered in recommending the Proposed Merger to shareholders. However, the Proxy fails to disclose any analyses performed by Goldman Sachs. Such information is plainly material to Vesper shareholders and strikes at the heart of the decision they are being asked to make regarding the Proposed Merger. The omission of this material information from the Proxy is in direct violation of securities regulations Item 1015 and Item 14(b)(6) (17 CFR § 229.1015 and 17 CFR § 240.14a-101) and renders the description provided therein misleadingly incomplete.

24. Moreover, the Proxy also lists among the "material" factors that the Board reviewed a comparable companies analysis, which compared HydraFacial to existing publicly listed companies with certain similar characteristics to HydraFacial, which, together with HydraFacial's projected growth rate, presented a compelling acquisition opportunity for the Company and its stockholders. However, the Proxy fails to provide the results of this analysis or any summary thereof. Given the importance of valuation to a shareholder's decision in a Proposed Merger, shareholders are entitled to a fair summary of the analyses performed, especially when those analyses were relied upon by the Board to approve the Proposed Merger as in the best interests of its shareholders. The failure to disclose the valuation analyses renders the related statements misleading.

25. Additionally, the Proxy omits critical financial projections for Vesper, HydraFacial, and/or the Combined Company prepared by Goldman Sachs (the "Omitted Projections"). The Proxy explicitly states that the Company hired Goldman Sachs to prepare a financial model; however, no Goldman created projections are included in the Proxy. Defendants elected to summarize HydraFacial's financial projections, but they excised and failed to disclose the Omitted

Projections. By disclosing certain projections in the Proxy and withholding the Omitted Projections, Defendants render the table of projections on page 154 of the Proxy materially incomplete and provide a misleading valuation picture of HydraFacial. Complete and accurate financial projections are irreplaceable when it comes to fully and fairly understanding a company's value.

26. Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such information must be complete and accurate. Defendants have disclosed some of the valuation information and projections provided to and relied upon by the Board but failed to disclose the valuation analyses performed by Goldman Sachs and/or the Company's officers and directors and the Omitted Projections. These omissions render the summary of the projections, HydraFacial's financial picture, the valuation implied by the Merger Consideration, the reasons by the Bord in support of the Proposed Merger, and the recommendation of the Board provided in the Proxy misleadingly incomplete.

<u>The Misleadingly Incomplete Information Regarding Goldman Sachs</u>

27. The Proxy omits material information about the potential conflicts of interest facing the Company's financial advisor, Goldman Sachs, including the compensation received for acting as a financial advisor, the compensation received for their involvement with PIPE Financing, and their relationships with numerous parties involved in the Proposed Merger.

28. The Proxy states that the Company hired Goldman Sachs to provide financial advice on a potential acquisition of HydraFacial, assist with the Company's preparation of a financial model and help negotiate the Proposed Merger. Goldman Sachs was also responsible for

putting together the $350 million Pipe Financing. However, the Proxy fails to state: (i) the compensation Goldman Sachs received for acting as a financial advisor for either transaction; (ii) the historical relationships between Goldman Sachs on the one hand, and the Company, the Private Placement Investors, the Individual Defendants, HydraFacial, or any affiliates thereof (including, but not limited to, LCP Edge Holdco, DW Healthcare Partners, and BLS Investor Group) on the other; and (iii) whether Goldman Sachs had any involvement with any of the financing of HydraFacial, including whether Goldman Sachs stands to benefit from the repayment of HydraFacial's existing credit facilities that will occur upon the completion of the Proposed Merger.

29.    Disclosure of any compensation received or to be received as a result of the relationship between a financial advisor and the company it advises, or its related affiliates, is required pursuant to Item 1015. Moreover, it is important for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered when assessing how much credence to give its work or how much scrutiny to give the Proposed Merger. A reasonable shareholder would want to know what important economic motivations that the advisor might have.

The Misleadingly Incomplete Background of the Merger

30.    The Proxy contains a misleadingly incomplete summary of the events leading up to the Proposed Merger and omits material facts. Once a company travels down the road of partial disclosure of the history leading up to a merger, they had an obligation to provide shareholders with an accurate, full, and fair characterization of those historic events. Even a non-material fact can trigger an obligation to disclose additional, otherwise non-material facts in order to prevent the initial disclosure from materially misleading the stockholders.

31. First, the Proxy fails to disclose the timing and nature of the negotiations leading to the continued employment and/or Board memberships in the Combined Company. Such information is important to shareholders because negotiating for continued employment and Board seats is a conflict of interest that could cause the Individual Defendants to prioritize their own continued involvement in the Company over the value Vesper maintained through the Proposed Merger. Accordingly, the omission and/or partial disclosure of this information renders the summary provided in the Proxy misleadingly incomplete.

32. Second, the Proxy states the Company reviewed several business combination opportunities and entered into substantive discussions with multiple potential target businesses other than HydraFacial, but fails to disclose the details concerning any of these discussions, including: (i) offers or valuations made; (ii) whether confidential information was exchanged; (iii) whether NDAs were executed; and (iv) and the terms of any NDAs including standstill and or DADW provisions. Such information is directly related to the decision to approve the Proposed Merger or seek a better deal. Thus, the omission of this information renders the summary of the process misleadingly incomplete.

33. Third, the Proxy states that in connection with the Proposed Merger, Vesper offered a private placement of $350 million its stock (the "PIPE Financing") to certain of its investors. However, the Proxy fails to fully disclose the identity of the Private Placement Investors involved with the PIPE Financing. Such information is material to shareholders and must be disclosed.

34. Fourth, the Proxy states that "each member of the Board was present at one or both of the two meetings" on December 8, 2020 with the Company's legal advisors and financial advisors. The use of the language: "one or both of the two meetings" indicates that every board member was not present at both meetings. If any of the board members missed either meeting,

then shareholders need to know which members were absent and why they were absent. Given that the Merger Agreement was approved in connection with these meetings, this information is material to shareholders so they can understand whether each Board member made a fully informed decision in approving the Proposed Merger.

35. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading in contravention of the Exchange Act and the Individual Defendants' duty of candor/disclosure. Absent disclosure of the foregoing material information prior to the forthcoming Shareholder Vote, Plaintiff will be unable to cast an informed vote regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
### Against All Defendants for Violations of Section 14(a) of the Exchange Act

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any

material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information. Item 1015 and Item 14(b)(6) require the disclosure of the omitted Goldman Sachs presentation and the financial advisor's relationships and compensation. 17 CFR § 229.1015; 17 CFR § 240.14a-101. Therefore, the omission of this information violates Section 14(a).

40. Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Merger. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections and valuation information; (ii) Goldman Sachs' potential conflicts of interest; and (iii) the background of the Proposed Merger.

41. In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

42. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the

Proposed Merger; indeed, the Proxy states that the financial advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided them. Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement.

44. Vesper is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

45. The misrepresentations and omissions in the Proxy are material and will deprive Plaintiff of her right to cast an informed vote on the Proposed Merger if not corrected prior to the special meeting of Vesper's shareholders. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate

and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II
### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of Vesper within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or knowledge of the misleadingly incomplete statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the material statements that Plaintiff contends are incomplete and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing this document.

50.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The

Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III
### Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure

54. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

56. As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to

Plaintiff and the Company's other public shareholders.

57. The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

58. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of Vesper shareholders to vote on the Proposed Merger or consummating the Proposed Merger, until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

//

| | |
|---|---|
| Dated: January 26, 2021 | **MONTEVERDE & ASSOCIATES PC** |
| | */s/ Juan E. Monteverde* |
| | Juan E. Monteverde (JM-8169) |
| | John Baylet (JB-6725) |
| | The Empire State Building |
| | 350 Fifth Avenue, Suite 4405 |
| | New York, NY 10118 |
| | Tel: (212) 971-1341 |
| | Fax: (212) 202-7880 |
| | Email: jmonteverde@monteverdelaw.com |
| | jbaylet@monteverdelaw.com |
| | |
| | *Attorneys for Plaintiff* |

